HAWTHORNE, Justice.
Plaintiff Bennett A. Robichaux is appealing from a judgment of the district court rejecting his demand against the Texas and New Orleans Railroad Company, defendantappellee, for the sum of $3,588.75. Plaintiff alleged that while employed as an engineer by the defendant he was discharged on May 6, 1944, without just and sufficient cause, that he was reinstated on May 16, 1945, and that under the terms and provisions of a contract between the defendant and the' Brotherhood of Locomotive Engineers, to which plaintiff’s employment was subject, he was entitled upon reinstatement to the sum of $9.57 per day for all time lost as a result of his suspension, or the aggregate amount of $3,588.75. The provision of the contract upon which he relies reads:
“Section 1. No engineer shall be suspended or discharged or demerits entered against his record, without just and sufficient cause. Any engineer suspended or discharged shall be entitled to a fair and impartial investigation, and if found not guilty, shall be reinstated to his former position and allowed $9.57 per day for all time he has lost on such account.”
On May 6, 1944, plaintiff was notified by the defendant railroad of his discharge from its employ for insubordination and for being quarrelsome, profane, vulgar, and abusive, in violation of Rules 801 and 802 of its transportation department. Those rules provide:
“801. Indifference in the performance of. duties will not be condoned. Employees who are careless of the safety of themselves or others, insubordinate, dishonest, immoral, quarrelsome, or otherwise vicious, will not be retained in the service.
“802. Civil, gentlemanly deportment is required of all employees in- their dealings with patrons, the public, their subordinates, and each other. Boisterous, profane, or vulgar language is forbidden. Employees, must not enter into an altercation, but will report the facts to their immediate superi-, or.”
Plaintiff’s discharge resulted from an altercation on April 25, 1944, at the terminal in New Orleans between him and a yardmaster in the employ of the defendant. Under the contract between the defendant and the Brotherhood of Locomotive Engineers, any engineer discharged could elect, to handle his own case, hut he had the right to have the regularly constituted committee of the union represent him in the handling of his grievance. The plaintiff in this case on May 11, 1944, wrote to the local chairman' and the members of the grievance committee of the union, giving his version of the facts-leading to his discharge and authorizing and - requesting the committee to handle his case *87 through the office of the union. The officers of the union then began negotiations with the defendant railroad seeking the reinstatement of the plaintiff-appellant. Their request for reinstatement of appellant was refused on two occasions, but on March 29, 1945, the railroad agreed with the officials of the union to reinstate appellant in his position as engineer on a leniency basis without pay for time lost and with seniority unimpaired.
The union notified plaintiff-appellant of his reinstatement by telegram, and the defendant railroad likewise notified him of reinstatement and the terms and conditions thereof. Upon being so potified plaintiff-appellant wrote the railroad that he could not comply with its request to return to his employment as his case was still in the hands of the union. He was then informed by the railroad that he would have to report for work no later than May 15, 1945, in order to protect his seniority, and accordingly plaintiff returned to work and was still in the employ of the defendant railroad at the time he filed this suit. On May 11, 1948, three years after his reinstatement, he instituted this suit alleging that his discharge had been without just and sufficient cause and seeking to recover from defendant pay for time lost.
In our opinion the question of whether plaintiff’s discharge was without just and sufficient cause is not one which we are called upon to answer in this suit, since he is bound by the settlement made by the union in his behalf which he fully accepted and under which he has ever since been receiving benefits. The record discloses that plaintiff was able to return to his employment only by virtue of this settlement, and he cannot accept it in part and repudiate it in part; that is, he cannot accept the benefits of reinstatement and unimpaired seniority and at the same time reject the condition of his reinstatement that he was to receive no pay for time lost.
Plaintiff-appellant contends that the union was without authority to compromise his case, as the power of an agent to compromise must expressly and specially be authorized under the provisions of our Civil Code. Even i'f the union was without such authority as contended by appellant, though we do not concede this, appellant accepted the settlement and is bound by it. He argues that the settlement was not binding on him when he returned to work because he was legally obligated to return in order to mitigate appellee’s damages. He concedes, however, that he went back to work without reserving any right or giving any notice to the defendant of his dissatisfaction with the terms of his reinstatement, and it is clear from his testimony that his real reason for returning to work was to protect his seniority rights.
For the reasons assigned, the judgment appealed from is affirmed, appellant to pay all costs.